May it please the Court, I'm Jeffrey Wellens, counsel for the appellant. This lawsuit concerns a California law that imposes a very modest and minor obligation on banks that issue convenience checks or balance transfer checks. The Court dismissed the case on the pleadings, even though the – based solely on the doctrine of federal preemption, even though the doctrine of federal preemption is, generally speaking, a very fact-oriented doctrine that requires a consideration of the impact or burden on the national bank and a weighing of that to determine if it's significant enough to merit the finding of preemption. Some laws, ideally or presumably, are so oppressive or so – interfere to such a great degree with the functioning of a national bank that it's not necessary to have a factual record developed. However, this is simply not such a law. Examples of those types of laws would be laws that completely prohibit advertising or attempt to regulate advertising to prevent the marketing of national bank services. Those are the types of cases which are cited in the briefs. Or cases which impose a state regulatory or licensing scheme on a national bank. But we don't have anything like this. What we have here is a law that allows the bank to do whatever it wants to do in terms of marketing a particular product, as long as it includes essentially a one-sentence disclosure, which it is not already doing with the marketing material. There's no evidence that it would place any burden of any kind on a national bank to comply with the law. But when we talk about significant impairment and we're talking about the NBA, aren't you really suggesting that loaning money for security purposes, which is what's happening here, is not significant and not within the purview of the NBA? Isn't that a difficult position for you to take? No, I'm not arguing that at all. I think the National Banking Act clearly would apply to a law of this type if it placed a significant burden or impairment. Well, that's what I'm concerned about. When you talk about significant burden, it's one thing for you to say, well, it's a one-liner. It can't be very significant. But that's really not the test, right? It's really what it does to Chase's business vis-à-vis their being a national bank. It wouldn't do anything to their business. It would have to help them. It would do nothing to their business, except apparently the NBA says that you can't do anything to their business. Well, and that's where we come to two different schools of thought, really. And the problem is the Supreme Court has never really woven the two schools of thought together. There is the significant burden or impairment test. The Respondent essentially concedes this ruling cannot be upheld under that test because there's no factual evidence of any burden. So then there's a second test, which seems to speak of any limitation on a national bank. And truly, if that is the law and that is the test, then you can't pass any kind of state law that places any limit, no matter how trivial or insignificant, on a national bank, and we lose. Simple as that. But that is not the law. The Supreme Court has never said that the test which is offered by the Respondents, any control, any limitation on a national bank is automatically preempted. I don't understand how you can equate this with sort of an insignificant role when we're talking about lending money, which is the lifeblood of national banks. Isn't that what we're talking about, is lending money and how you can lend it? I mean, these are checks that people get in the mail. Most of the time my cases in the criminal side down in New York City are about people stealing them. But be that as it may, that's not your problem. But basically what happens here is that all they're saying is that they — all you're saying or talking about is this is a lending money concept, and indeed that's what national banks' business is. There's two parts of the Federal preemption test. The initial threshold, which I concede, is whether or not the law affects a core function of a national bank. Obviously, lending is a core function. So there's no question about it that we now get past the threshold to the issue. But the whole point of the Supreme Court decisions, every one of those cases involved a core function. If it did not, it would not even be addressing preemption at all. You still need to move on to the second part, Judge Barron, which is the consideration of whether there's a significant impact or burden created. Just because it affects a core function doesn't automatically make every law preempted. Well, I think there's a lot to be said when you get to it, assuming we let you get there, on the consumer protection laws. But in terms of this legend, I'm not that clear that it isn't almost the same thing. That is, that it is a significant burden or that it's enough of a significant burden to meet the core issue test. Clearly, this is a consumer protection law. And if this consumer protection law that simply requires the national bank to tell the consumer that they will be charged interest from the get-go on the use of this check, because we're talking about a credit card check, everyone knows that credit cards have a grace period, and it's normal to expect that you don't pay any interest as long as you pay your bill every month, which could be 20 days, 30 days after you use the credit card. These convenience checks are different. Even if you use the check to pay a bill, a utility bill, to purchase furniture or whatever, you are charged interest from the very day you use it, or at least when it posts. I guess what I'm asking you is whether you can tell us the difference between the consumer protection concept, which you're now espousing, and the rules of the National Bank Act, and how California can indeed have a greater role in the consumer protection area than the National Bank Act would, on its face, provide. The National Bank Act does not expressly prohibit consumer protection laws, and the United States Supreme Court has never held that every consumer protection law, or any other type of law for that matter, is automatically preempted because the alleged offender is a national bank. The standard set forth by the Supreme Court in the Barnett case and in a series of cases after that is not really a balancing test in the sense of balancing the benefits of the law versus the impact, but at least a test to see if there is a significant impact. And if there is a significant impact, then it's preempted. But we have to look at the law. What is it about this law that allowed the district court or perhaps you, Judge Barron, to conclude that inherently this law places a burden on the national banks? What does this law make them do that constitutes a burden? They already have to print out a letter explaining the deal. Everyone gets those letters in the mail all the time. What's the big deal about adding a sentence or clarifying a sentence or something to say what the State law requires? Could that be a burden? I don't know. Maybe they can come in later when there's a factual record and show, yes, it is a burden. We'd have to restructure the whole printing press system or something or it's going to cost us $5 million or $100 million or whatever. Okay. Well, we'll address that at that point in time. But this was on the pleadings. We haven't had a chance to get into that. The Court was required to essentially take the pleadings at face value, and they certainly allege no burden at all. And to say the very nature or language of this law is such that it must impose a burden. You agree that the regulations do that. Yes. And which sort of makes my point that the OCC realized that the NBA did not go far enough and decided they wanted to specifically address the impact of State advertising limitations. The facts always have two faces, you know. And you can view this as, whoops, we need more, or it's pretty clear what it says. We're going to clarify and make it explicit to avoid losses like this. So you can do either inference, I think, from the fact that it passed the regulation. But you agree that for the future, California is under regulation, assuming regulation is valid. California cannot impose this requirement on national banks. If that law is valid and means what it says, the regulation, you're correct. And we challenged it. I mean, it's in the pleadings. No, no. I realize you have. And that would apply to your other claims as well. There is room, wiggle room, if you want to call it, left in the regulation itself which speaks of State tort claims, general law still being applicable. The UCL, the unfair competition law, is a general law. We have two theories under the UCL, actually three, under the UCL. One is that the practice is unlawful because it violates 1748.9. That would be gone under this regulation if the regulation holds up. But we still have the deception claim, which is essentially sort of like a common law fraud claim. And the regulation itself ---- Under the unfair competition law, 17200, the Business and Professions Code, it defines a prohibited business practice to include any unlawful, unfair, or deceptive or misleading business practice. We're alleging as an alternative theory of liability in the complaint, and it was addressed in the summary judgment or motion to dismiss, we're alleging that the practice of telling people that, you know, you're going to ---- here's a convenience check, here's all the terms and conditions, and not telling them that, by the way, unlike your credit card, you're charged interest from the get-go, that itself is a material fact that's being omitted, one that the customer would rely upon. It's essentially a deception claim, even though California's version of deception doesn't require reliance. But the point is it's analogous to our fraud claim, and fraud claims seem to still be approved as something that would be tolerated. You don't have a common law fraud claim. No. A common law fraud claim would require more elements than is required under the deception. We don't have one currently. We could amend to add one if that were necessary, but that's not our chosen theory of liability here. We have a much easier burden under California's deception claim because it doesn't require individual proof of reliance. It says would a reasonable consumer have been deceived by the nature of this disclosure? But, see, you have to fit that into a tort mold, right? Again ---- In order to get out of the regulation, get out of one regulation. I mean, there is contract, tort, something else. Tort is the most, or at least one plausible alternative, and it seems to me a common law fraud claim sounds to me a lot more like a tort claim than this thing that you have here. Well, it is. It does. It is more like a common law. It is a common law tort. The question is, I look at the regulation. Did they really mean it has to be a common law tort or couldn't it be a statutory type of tort, even if it's not, you know, something that's traditional? Deception in many States is a common law version of fraud. California, it really isn't. California has a slightly different approach to treating fraud and deception types of claims. The type of deception under the UCL is different than the common law fraud, but I don't think that ---- But you would have a tough time maintaining a class action as well, wouldn't you, under a common law fraud claim, because fraud is so individual. Yes, although there's doctrine in California law, at least, that allows for reliance to be inferred by a standard disclaimer for purposes of class certification. So, but, yes, it certainly is a ---- would be more difficult for us to obtain class certification, which means it would be more difficult for us to obtain relief for all the people who are affected, and that's the reason why we proceeded under the UCL. But I don't think that the OCC was trying to define every law that falls under the definition of fraud. It would have to list every State's fraud statutes, and it didn't try to do that. It was just trying to present a general idea that, yes, if a national bank commits fraud on you, it's not immune from liability, even under this regulation. It's not giving it a carte blanche. Thank you. We'll hear from the other side. You are way out of your time. Yes. We'll hear from the other side. Good morning, Your Honors. Lawrence Hutt for the Defendant and Respondent on this appeal. The appellant, just to go to the last point that the Court was addressing with Mr. Willans, the appellant spends many pages of his opening brief establishing why a claim under the statute, the unfair competition law of California, is not a tort claim. And it includes the fact that, number one, the California State courts don't interpret a UCL claim as a tort claim. They've been very clear about that. It is different in terms of its elements. No requirement for deception. There is no requirement of an allegation that anyone be actually deceived. No requirement for causation. And no requirement for reliance. It also is a difference in remedies. So it is very different than a tort claim and would not easily fit within that. And we maintain it does not fit within that. What does it then? Well, a common law fraud claim, for example, if the bank told a potential borrower, we'll make the loan at 8 percent. No, no, I'm sorry. I don't think you heard my question. You said it's not a common law fraud claim. I said, what is it then? It's a statutory claim. It is really an enforcement remedy that ---- Like a regulatory claim. It is not a regulatory claim. It is not a tort claim at all because it differs in the basic nature of the relief afforded and in the duty that's involved. So it's not recognized by the State courts as a tort and it's a statutory right that's been created. And this is significant not merely for in terms of subsection E of the OCC regulation that is an issue, but it's significant as well with respect to Appellant's  I guess it would be sort of like a 10b-5 claim, which is a species of fraud, securities fraud, but we wouldn't call that a common law fraud claim. It's a creature of statute. I confess that I am not a scholar on 10b-5, but I believe it has more traditional elements of tort, including a requirement that somebody was deceived. There is no requirement under the California unfair competition law that anyone be deceived. And that is a crucial difference. But the exception that counsel is seeking to invoke, it's not simply enough to attempt to pigeonhole a statute or a claim into one of those categories like tort. Even a tort claim would not survive the regulation if the burden it imposes is more than incidental, and that's in the express language of subsection E. But you can't dispute that here. You didn't. It's a motion. You've presented no evidence that it's more than incidental, and you couldn't have. Not in the context of the motion for judgment on the pleadings, but I think that the other The evidence doesn't look like more than incidental to me. Your Honor, I You know, you print these things. You know exactly the address, the letter is keyed. It's not like the other case where you have to sort of guess where the person is, which, you know, makes it at least different. In this case, they send the letter out, and the zip code tells you exactly what it is. You know, they could have different disclosures depending on the state of the zip code. One I mean, it just doesn't strike me as a big deal. The underpinning of the National Bank Act, and one of the things that the National Bank Act has been recognized as being intended to do, was to achieve uniformity, that a national bank, unlike a state-chartered bank, a national bank could do business nationwide under a uniform set of regulations and subject to a uniform enforcement policy. This was recognized early on in the Easton case of the U.S. Supreme Court in the You know, you're the one who raised significant burden. So you're now stuck with having to answer that question rather than going on and talking about other things. You're the one who raised it. And if it's not a significant burden, then all the stuff you say doesn't matter because it's not significant. Okay. So if that's the thing you want to sort of get out from and say, oh, this is a big, big burden, I, you know. No. I want to be clear that our position is that the test is multifaceted, that there is no single phraseology of a test for preemption. And we have used and applied in our briefing a condition test, which we've explained. But it seems, and it is our position as well, that were the Court to be concerned with the issue of burden or imposition, we would say that part of that imposition and what one of the things of that imposition that would make it on its face. You're the one who raised it. And I wanted to finish addressing it. Yeah, go ahead. It upsets uniformity in terms of the ability to do business on a uniform basis nationwide. Why? It's a brief disclosure. It does not have anything to do with the terms on which you do business. The claim is only that the letter you send to people has to say something else. It has to say something else in California, and then it does it in Maine or in New York or in some place else. What's the big deal about that? You know, it's not like there's only one consumer here. There are millions of consumers here. California is a big market. And, you know, what's the difficulty in figuring out what you have to tell California consumers in that one letter? It's a line of text added to a letter that's multiplied by millions and millions of times. Just to my evidence alone. But I think that, Your Honor, is, number one, the early on in Easton, the Court was concerned that that would subject, if a bank is subject to the laws of California on a disclosure requirement, it's subject to the laws of every other State. And those requirements can be different, conflicting, and that that is exactly antithetical. But there's no conflict, because you don't send a letter to two States. You send a letter to a consumer in one State. It's not like the same letter goes to a consumer in another State. You can tailor your letter by zip code. And, you know, you know exactly, you direct it through the mails. You know exactly where it will land. You know that the person in Boston is going to be different than the person in Las Vegas, even though the Boston, Las Vegas are not that far apart. You know, you direct them to different post offices, and they land, will always land, one letter will always land on the California side of the border, and the other letter will always land on the Nevada side of the border. It's not so hard. Well, it does require 50 different wordings, 50 different placements, 50 different ways of sorting your mail, et cetera, which is not done presently. Have you heard of computers? The sorting part doesn't impress me very much at all. They're figuring out, well, you know, you're dealing with millions of consumers in California. You're probably dealing with hundreds of thousands of consumers, at least in a small State like Nevada. It hardly seems like a big deal. Well, I would call the Court's attention respectfully to the language in the recent Waters decision of the U.S. Supreme Court, in which the Court specifically returns to the issue of uniformity and not only cites the Easton case favorably, but says, achieving uniformity of operation nationwide was a core purpose of the National Bank Act. But as I said, and I think I hope our briefs make clear, that the burden test need not be applied at all. It's a condition test. It's an impairment, et cetera. And I brought it up simply. You're the one who raised it. I thought your best argument is you've got a regulation that wins the case for you, but you choose to talk about other things. No, I think the regulation wins the case for us, Your Honor, as well. That's what I thought. I didn't say it was a winning argument. I said it was your best argument. I believe it is a – I think it is a very strong argument and one of the bases of our arguments. Only avoid a strong argument when you're arguing up here. It's always good to avoid that one. But I was attempting to refute counsel's argument on the tort issue. But I want to make one other point that is perhaps not as explicitly addressed in the brief. And it's the point Appellant makes in saying the regulation would cover this law, but it would apply in the future. And there are really several answers to that. One is the one that Judge Kaczynski's question, I think, alludes to. And that is what the OCC did here was to put in one place, on one page, a distillation of 140 years of Supreme Court precedent. And that is not changing the law. That's not adopting new law. That's putting it in one place. It didn't change. Do you think that's law, what the OCC does? It is distilling, I think, what the law has been. But even if it is not a legal decision, the preamble that the OCC issued in the Federal Register, and the site I think is in the brief, is, makes it clear that those categories of law also represent the OCC's judgment based on its experience as the inspector, the regulator, the overseer of the bank. Yeah. That's not the same as Congress, though, right? Congress has delegated that power in the case of national banks to the State. Did you mean Stevens dissent in one of these cases? Justice Stevens dissented in the Waters case. But the delegation by Congress is in goes back to Section 93A, and it's recognized explicitly in Section 43, which recognizes that with proper notice and comment, the OCC can propound regulations that preempt the application of State law in the consumer protection area as applied to national banks. The third point I wanted to make about this future application is that counsel assumes, when he cites the couple of cases that he does, that the mere fact that the offer may have been distributed before the regulation took effect, that the application of that regulation is automatically, quote, retroactive under the law. In fact, the law is to the contrary. The law, the suit itself, the underlying suit here, was not filed until over a year after the regulation was adopted. And the law is clear, both on the State side and on the Federal side, that the change in law for a, that would affect a claim that has either not been asserted or even has been asserted, is valid until and unless a final, unappealable, unreviewable judgment has been entered. In other words, basically, as the Supreme Court has recognized, it's the law in effect at the time of the decision that controls, unless there's a vested right and a pending claim or a future claim is not a vested right. California takes the same approach with respect to its laws, and that's the significance in part of the fact that the UCL is a statutory enactment, because under the legislative repeal doctrine under California law, one has no vested right in the exercise of a statutory right. And until you get a final judgment, the legislature or the people by initiative can change the law, and that new law becomes effective, because you have no vested right in the application in the future of existing law. So there are three reasons why that regulation not only applies to this situation and these claims, but it applies in their totality, not merely in futuro from February of 2004. Okay. Thank you. If we don't have enough time, we'll give you a minute for rebuttal. Thank you. I don't really understand what counsel just said, but it sounds to me like he was arguing that there was a change in State law during the – before we filed the lawsuit and therefore we didn't have any vested rights, so we're subject to the new law. That's not what happened here. State law has always been the same. The change was in the enactment of a regulation, a Federal regulation that seeks to preempt the State law, supposedly, although it wasn't addressed specifically to this law. Federal regulations are prospective, always, unless they explicitly state they are retroactive. This one does not expressly, explicitly, or even impliably state it's retroactive. We cite the Supreme Court case of Bowen v. Georgetown University Hospital and the Ninth Circuit Kink Amolage v. INS case. Both of them are very clear. The OCC regulation is prospective only February of 2004. The claims arise back in 2003. So there's no preemption, even if the regulation applies. Okay. Thank you. Cases are going to stand some minutes. We are adjourned. All rise. The court for this session stands adjourned.
judges: Kozinski, Rawlinson, Baer